UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DARWIN YARLS, JR. ET AL

VERSUS

DERWYN BUNTON ET AL

CIVIL ACTION

NO. 16-31-JJB-RLB

**RULING**

This matter is before the Court on a Motion for Relief from Judgment by all Plaintiffs (Doc. 64). The Defendants have not responded. For the following reasons, this Motion is **DENIED**.

I. BACKGROUND

In January 2017, the Court dismissed this case for the following reason: "The concerns that this Court has with the case touch upon fundamental issues about the nature of its judicial power and, even more fundamentally, about its role in relation to state criminal courts. Ultimately, and after reviewing all of the briefing in this case, this Court finds that it is required to dismiss the case on comity and federalism grounds."[1]

The Plaintiffs bring a Motion for Relief from Judgment arguing that the Court's prior decision rests on fundamental mistakes of law. Specifically, the Plaintiffs assert that (1) relief would not require an "ongoing audit" of Orleans criminal proceedings; (2) Louisiana criminal proceedings are inadequate to remedy Plaintiffs' constitutional harms; and (3) Defendants voluntarily submitted to the federal forum.

II. STANDARD

Altering or amending a judgment "is an extraordinary remedy that should be used sparingly."[2] A motion to alter a judgment "is not the proper vehicle for rehashing evidence, legal

---

[1] Doc. 62.
[2] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

1

theories, or arguments that could have been offered or raised before the entry of judgment."[3] "A court should refrain from altering or amending a ruling or judgment…unless one of the following grounds is present: (1) the judgment is based upon manifest errors of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) manifest injustice will result; or (4) an intervening change in controlling law has occurred."[4]

### III. DISCUSSION

#### A. Ongoing Audit

The Plaintiffs' first argument is that the Court erred in determining that relief would require an ongoing audit of state criminal proceedings. After reviewing the Plaintiffs' brief, the Court finds that it still has the same concerns about an ongoing audit that it raised in its prior Ruling. This Court again declines the Plaintiffs' "invitation to consider in isolation [the narrow] request for relief, as though reaching the merits of their declaratory judgment claims would end the matter. For 'even the limited decree' sought here 'would inevitably set up the precise basis for *future intervention* condemned in *O'Shea*.'"[5] The Plaintiffs' brief actually substantiates the Court's concern:

> The Court also asks, "[W]hat would happen if the Defendants failed to implement the plan? Would this Court have to order attorneys for certain indigents?" Similarly, the Court posits, "What if the Defendants were nominally complying with the order by assigning counsel to indigents but those attorneys were not 'competent?' Would the Court have to make a 'competence' determination pretrial?" Again, the answer to both sets of questions is no. The Court has no authority to appoint counsel or make competency determinations directly. Instead, the Court would exercise its remedial authority through Defendants. The Louisiana Public Defender Board already has standards for attorney competence, which Plaintiffs do not contest. *The Court would simply inspect on a periodic basis whether Defendants were following their own rules in appointing counsel. If Defendants failed to comply with the Court's order—either by not assigning counsel or assigning counsel in name*

---

[3] *Id.*
[4] *Blackard v. Livingston Parish Sewer District*, Civil Action No. 12-704, 2014 WL 199629, at *1 (M.D. La. Jan. 15, 2014).
[5] *E.T. v. Cantil–Sakauye*, 682 F.3d 1121, 1125 (9th Cir. 2012) (emphasis in original).

*only—the Court would determine whether to hold Defendants in contempt.* This is how federal courts traditionally deal with noncompliant executive officials.[6]

The Plaintiffs assert that the Court would easily be able to tell if the Defendants were assigning counsel in name only thereby violating the potential order issued by this Court. However, this is a competency determination by another name, the very inquiry that a federal court should not be undertaking during a pending criminal proceeding. The Plaintiffs agree that the Court has no authority to make competency determinations directly but assert that the Court would be able to determine whether Defendants were appointing counsel in name only. To the Court, a "name only" and a competency determination are functionally the same.

### B. Adequate Opportunity in State Court Proceedings

Plaintiffs argue that this Court erred in dismissing the case on *Younger* grounds because *Younger* only allows federal courts to abstain if "the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges."[7] The Court finds that Plaintiffs still have an adequate avenue to raise their constitutional challenges for two reasons. First, in its previous Ruling, the Court noted that the proper role of a federal court is to address the adequacy of a state-defendant's public defense in a habeas proceeding.[8] Second, the Court determined in its prior Ruling that state court judges were adequately monitoring the rights of the Defendants who appeared before them by removing them from the waitlists.[9]

The Plaintiffs argue that state proceedings do not provide an adequate opportunity to challenge their injuries:

> In effect, Louisiana has prescribed waiting lists as the appropriate Sixth Amendment remedy for Plaintiffs' claims. State criminal proceedings are therefore inherently inadequate. Confining Plaintiffs to raise their constitutional challenges in state court would force them to suffer the exact injury they challenge in federal

---

[6] Motion to Alter Judgment 8, Doc. 64-1 (emphasis added).
[7] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 718 (5th Cir. 2012).
[8] Doc. 62 at 6-7 (citing *Gardner v. Luckey*, 500 F.2d 712 (5th Cir. 1974)).
[9] Doc. 62 at 12.

court: their indefinite placement on waiting lists. Louisiana's procedures are thus inextricably intertwined with Plaintiffs' constitutional injuries. The Court cannot coherently rule both that waiting lists are unconstitutional and that Louisiana's waitlist procedure is adequate. The former forecloses the latter. Abstention is therefore improper.[10]

The Plaintiffs are making a compelling catch-22 argument: by requiring them to contest their injury in state court, this Court is essentially forcing them to suffer the very harm they seek to question. However, the Court finds that these indigents, even if they are placed on a waitlist, have an adequate (although perhaps not an ideal) way to raise the problem with their state court judges. Additionally, the Court is unpersuaded that a brief time on the waiting list necessarily constitutes a constitutional injury. Moreover, the Court finds that its "ongoing audit" concerns outweigh any delays that these indigents have in having their waitlist concerns addressed in their pending criminal cases.

### C. Voluntary Submission

Third, Plaintiffs argue that the Court erred in dismissing this case on *Younger* abstention grounds because voluntary submission by state defendants is a well-established exception to the *Younger* doctrine.[11] Plaintiffs are correct about this well-established exception. "Federal courts are not compelled to abstain on *Younger* grounds when the state voluntarily submits to adjudication in a federal forum."[12]

However, Plaintiffs ignore the fact that the Court did not dismiss the case on *Younger* grounds alone. It also found that this was not a proper Article III case, a problem that cannot be ameliorated by voluntary submission:

> While the Court prefers to discuss its reasons for dismissing this case under the umbrella of *Younger* abstention, it alternatively finds that this is a non-justiciable case under Article III. "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so." "There is no

---

[10] *Id.*
[11] Motion to Alter Judgment 13, Doc. 64-1.
[12] *Umphlet v. Connick*, 815 F.2d 1061, 1063 (5th Cir. 1987).

reason to demand a final expression in terms of standing, ripeness, mootness, or political question doctrine, if the court is able to conclude that there is no sufficient need for deciding the issues tendered without relying on the frequent question begging terminology of any single concept." Although the Court could express its reasons for dismissing this case in terms of standing (especially the redressability prong), the prohibition against advisory opinions, or ripeness, the *Younger* doctrine provides a clearer framework for this Court to discuss those same concerns.[13]

Here, the Court's main concern was that ordering that a waitlist was unconstitutional would not necessarily solve the systemic/funding issues with the Orleans Parish Public Defense program. In that way, the relief the Plaintiffs sought would amount to no more than an advisory opinion. To fix the system, the Court would have had to order that the Plaintiffs be taken off of the waitlist and provided competent counsel. But a "competent counsel" injunction raised the "ongoing audit" problem mentioned above. This placed the Court in a bind that led it to conclude that this was a non-justiciable case.

The Plaintiffs have done an admirable job of attempting to set up this case for federal adjudication. However, when the Court peeled back the layers of this dispute, it was left with the firm conviction that this suit was not truly about the waitlist (nor would a declaratory judgment about the waitlist aid the indigent Plaintiffs), but about the inadequate budgeting for public defense. The Court was further persuaded that a budget increase was the end goal of the case (rather than just a declaration about the waitlist) when the Defendants refused to oppose the Plaintiffs at any point.

In coming to the conclusion that this was not a proper Article III case, the Court was partially guided by another federal case that dealt with dependency court issues whose wise words are apt here:[14]

> In sum, the claims asserted by plaintiffs and the relief requested strike at the very heart of federalism and *the institutional competence of the judiciary to adjudicate*

---

[13] Doc. 62 at 5-6.
[14] Doc. 62 at 8.

*state budgetary and policy matters*. Plaintiffs' claims require the court to set constitutional parameters regarding the function of both state judicial officers and state court appointed attorneys. The adjudication of these claims, which seek[s] to evaluate the relationship between caseloads and fair access to justice for children in a variety of situations, requires *the implementation of standards that no court has yet to address…* The implementation of any injunctive remedy would require an inquiry into the administration of Sacramento County's dependency court system and the court-appointed attorneys with whom it contracts. It would also require this court to impose its views on the budgeting priorities of the California legislature generally, and specifically on the Judicial Council of California and the Sacramento Superior Court. *The process of allocating state resources lends itself to the legislative process where people have an opportunity to petition the government regarding how their money should be spent and remove from office those political officials who act contrary to the wishes of the majority*. The judicial process does not share these democratic virtues. If the court granted plaintiffs' request, it would result in a command to the state to take money from its citizens, in the form of taxes, or from other governmental functions, in order to put more money in the Sacramento County juvenile dependency court system. While numerous parties, including the dependency courts would likely appreciate the influx of resources, such an award, implicating the balance of budget priorities and state policies, is *beyond the institutional competence of a federal court*. Rather, such injunctive relief constitutes an abrasive and unmanageable intercession in state court institutions.[15]

## IV. CONCLUSION

For the reasons stated above, the Court finds that it did not commit a manifest error of law in dismissing this case. Accordingly, the Motion for Relief from Judgment (Doc. 64) is **DENIED**.

Signed in Baton Rouge, Louisiana, on August 23, 2017.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[15] *E.T. v. George*, 681 F.Supp.2d 1151, 1166-67 (E.D. Cal. 2010) (emphasis added), *aff'd sub. nom., E.T. v. Cantil–Sakauye*, 682 F.3d 1121, 1125 (9th Cir. 2012). That Court also noted that the federalism and the justiciability issues were intertwined: "Defendants also contend that plaintiffs lack standing to bring their claims. Defendants' arguments relating to abstention and standing relate to whether plaintiffs' claims are properly before the court and within the confines of the judicial authority conferred by Article III. Indeed, assuming that plaintiffs have sufficiently alleged injury in fact and causation, the court's conclusions relating to its ability to redress such injury, as set forth *infra*, 'obviously shade into those determining whether the complaint' sufficiently presents a real case or controversy for purposes of standing. *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)." *Id*. at 1161 n.2.